**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| United States of America, | ) | No. CV-12-2020-PHX-FJM |
| Plaintiff, | ) ) | **CONSENT DECREE** |
| vs. | ) ) | |
| Cemex Construction Materials South, LLC, | ) ) ) | |
| Defendant. | ) ) ) | |

# TABLE OF CONTENTS

I. JURISDICTION AND VENUE ...................................................................................-1-

II. APPLICABILITY.........................................................................................................-2-

III. DEFINITIONS .............................................................................................................-3-

IV. CIVIL PENALTY ........................................................................................................-5-

V. COMPLIANCE REQUIREMENTS .............................................................................-6-

VI. REPORTING REQUIREMENTS ................................................................................-6-

VII. STIPULATED PENALTIES .......................................................................................-9-

VIII. FORCE MAJEURE ...................................................................................................-11-

IX. DISPUTE RESOLUTION ..........................................................................................-13-

X. INFORMATION COLLECTION AND RETENTION...............................................-15-

XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ..............................-16-

XII. COSTS ......................................................................................................................-17-

XIII. NOTICES .................................................................................................................-17-

XIV. EFFECTIVE DATE .................................................................................................-19-

XV. RETENTION OF JURISDICTION ..........................................................................-20-

XVI. MODIFICATION ...................................................................................................-20-

XVII. TERMINATION ......................................................................................................-20-

XVIII. PUBLIC PARTICIPATION ................................................................................-21-

XIX. SIGNATORIES/SERVICE ......................................................................................-21-

XX. INTEGRATION ........................................................................................................-22-

XXI. FINAL JUDGMENT ...............................................................................................-22-

XXII. APPENDIX..............................................................................................................-22-

i

Plaintiff United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), has filed a complaint in this action concurrently with this Consent Decree alleging that Defendant CEMEX Construction Materials South, LLC ("CEMEX") violated provisions of Regulation III, Rule 316 of the Maricopa County Air Quality Department ("MCAQD") Rules and Regulations, which under Section 113(b)(1) of the Clean Air Act ("Act"), 42 U.S.C. § 7413(b)(1), constitutes a federally enforceable violation of the Arizona State Implementation Plan.

The Complaint against Defendant alleges that at Defendant's aggregate mining and processing and concrete production facility located in Mesa, Arizona, Defendant failed to permanently mount watering systems at required locations, to install the required pressure control systems at cement silos, and to properly install a wheel washer.

Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint, and denies all of the alleged violations.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 113(b) of the Act, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395(a), because the violations alleged in the Complaint are alleged to have occurred in, and Defendant

conducts business in, this judicial district.  For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree and any such action and over Defendant and consents to venue in this judicial district.

2.      For purposes of this Consent Decree, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Section 113(b)(1) of the Act, 42 U.S.C. § 7413(b)(1).

## II.  APPLICABILITY

3.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

4.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.  Until this Consent Decree is terminated pursuant to the provisions of Section XVII, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to the United States, in accordance with Section XIII of this Decree (Notices) at least 30 Days prior to such transfer.  Any attempt to transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent

Decree.

## III.  DEFINITIONS

7.    Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.    "Active Facilities" shall mean all commercial and/or industrial Nonmetallic Mineral Processing Plants and/or Rock Product Processing Plants, that are operating as of the Effective Date of this Consent Decree or that commence operations thereafter until this Consent Decree is terminated pursuant to Section XVII, and are located in Maricopa County, Arizona, and owned or operated by Defendant;

b.    "Complaint" shall mean the complaint filed by the United States in this action;

c.    "Consent Decree" or "Decree" shall mean this Decree and the Appendix attached hereto;

d.    "Day" shall mean a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next business day;

e.    "Defendant" shall mean CEMEX Construction Materials South, LLC;

f.    "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies;

g.    "Effective Date" shall have the definition provided in Section XIV;

- 3 -

h.      "Facility" shall mean Defendant's aggregate mining and processing and concrete production facility located at 1901 North Alma School Road in Mesa, Maricopa County, Arizona;

i.      "MCAQD" shall mean the Maricopa County Air Quality Department and any of its successor departments or agencies;

j.      "Nonmetallic Mineral" shall have the definition at Section 234 of Rule 316;

k.      "Nonmetallic Mineral Processing Plant" shall mean any facility utilizing any combination of equipment or machinery that is used to mine, excavate, separate, combine, crush, or grind any Nonmetallic Mineral including, but not limited to, lime plants, coal-fired power plants, steel mills, asphalt plants, concrete plants, Portland cement plants, raw material storage and distribution, and sand and gravel plants. Rock Product Processing Plants are included in this definition;

l.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral;

m.      "Parties" shall mean the United States and Defendant;

n.      "Pressure Control System" shall mean a system in which loads of Nonmetallic Minerals and cement are moved in the proper sequence, at the correct time, and at the desired speed through use of valves that control the direction of air flow, regulate actuator speed, and respond to changes in air pressure;

o.      "Rock Product Processing Plant" shall have the same meaning as in Rule 316;

p.      "Rule 316" shall mean MCAQD Regulation III (Control of Air Contaminants), Rule 316 (Nonmetallic Mineral Processing);

q.      "Section" shall mean a portion of this Decree identified by a roman numeral;

r.      "Silo" shall mean an elevated storage container with or without a top that releases material through the bottom;

- 4 -

1                   s.       "State" shall mean the State of Arizona; and

2                   t.       "United States" shall mean the United States of America,

3   acting on behalf of EPA.

## IV.  CIVIL PENALTY

8.       Within 30 Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of $90,000 as a civil penalty.  If payment is late, Defendant shall also pay interest accruing from the date on which the Consent Decree is lodged with the Court through the date of payment, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging, in addition to stipulated penalties pursuant to Section VII (Stipulated Penalties).

9.       Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the District of Arizona, 405 West Congress Street, Suite 4800, Tucson, Arizona 85701-5040, (520) 620-7300.  At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in *United States v. CEMEX Construction Materials South, LLC*, and shall reference the civil action number and DOJ case number 90-5-2-1-10139, to the United States in accordance with Section XIII of this Decree (Notices); by email to [acctsreceivable.CINWD@epa.gov;](mailto:acctsreceivable.CINWD@epa.gov) and by mail to:

       EPA Cincinnati Finance Office

       26 Martin Luther King Drive

       Cincinnati, Ohio 45268

10.      Defendant shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

11.    No later than 60 Days after the Effective Date or upon commencing operations at a facility, whichever is earlier, Defendant shall install and operate automatic Pressure Control Systems on all operating cement Silo filling processing/loading operations controls of Active Facilities.  In accordance with Rule 316 Section 303.2(d), each such Pressure Control System shall be designed to shut off automatically cement Silo filling processes/loading operations if pressure from a delivery truck is excessive, as defined in any applicable Operation and Maintenance ("O&M") Plan.

12.    Permits.  Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.  REPORTING REQUIREMENTS

13.    Initial Compliance Status Report

a.    Within 75 Days after the Effective Date, Defendant shall submit to EPA a report that shall include the status of the compliance requirements of Paragraph 11, including, at a minimum, a listing of Active Facilities, the number of cement Silos at each Active Facility, and confirmation that a Pressure Control System is installed on each such cement Silo.  This confirmation should include a description of each such Pressure Control System, showing that it is a "Pressure Control System" within the meaning of this Decree and that its installation and operation fulfills the requirements of Paragraph 11.

b.            The report shall also include a description of any non-compliance at the Active Facilities with the requirements of this Consent Decree (including the absence of or failure to operate an automatic Pressure Control System on any cement Silo at the Active Facilities) and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to correct, prevent, or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

14.    Additional Compliance Status Report

a.            Twelve months after the submission of the report required under Paragraph 13, Defendant shall submit to EPA a report that describes, for the Active Facilities, the status of Paragraph 11's requirement to operate automatic Pressure Control Systems.

b.            The report shall also include a description of any non-compliance, since the date of the initial compliance status report, at the Active Facilities with the requirements of this Consent Decree (including the absence of or failure to operate an automatic Pressure Control System on any cement Silo at the Active Facilities) and an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to correct, prevent, or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation

to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

15.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Decree, or the performance of the Active Facilities, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic or facsimile transmission as soon as possible, but no later than 24 hours after Defendant first knew of the violation or event.  This procedure is in addition to the requirements set forth in the preceding Paragraph.

16.     All reports shall be submitted to the persons designated in Section XIII of this Consent Decree (Notices).

17.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision
> in accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information
> submitted.  Based on my inquiry of the person or persons who
> manage the system, or those persons directly responsible for
> gathering the information, the information submitted is, to the
> best of my knowledge and belief, true, accurate, and
> complete.  I am aware that there are significant penalties for
> submitting false information, including the possibility of fine
> and imprisonment for knowing violations.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

18.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the Clean Air Act or implementing

regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

19.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Consent Decree and as otherwise permitted by law.

## VII.   STIPULATED PENALTIES

20.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

21.     Late Payment of Civil Penalty

If Defendant fails to pay the civil penalty required to be paid under Section IV of this Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $500 per Day for each Day that the payment is late.

22.     Compliance Requirement

The following stipulated penalties shall accrue for each failure to timely install or to operate a Pressure Control System as required by Paragraph 11:

| Penalty Per Violation Per Day | Period of Noncompliance |
| --- | --- |
| $500 | 1st through 14th Day |
| $650 | 15th through 30th Day |
| $800 | 31st Day and beyond |

23.     Reporting Requirements

The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI of this Consent Decree:

- 9 -

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $100 | 1st through 14th Day |
| $150 | 15th through 30th Day |
| $200 | 31st Day and beyond |

24.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

25.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

26.     The United States may in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

27.     Stipulated penalties shall continue to accrue as provided in Paragraph 24, during any Dispute Resolution, but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.     If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

28.      Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraph 9, except that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

29.      If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

30.      Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of Rule 316, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory federal penalties imposed for such violation.

## VIII.  FORCE MAJEURE

31.      "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.  The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

32.      If any event occurs or has occurred that may delay the performance

- 11 -

of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to EPA, within 72 hours of when Defendant first knew that the event might cause a delay. Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.  Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

33.     If EPA agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA for such time as is necessary to complete those obligations.  An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

34.     If EPA does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify Defendant in writing of its decision.

- 12 -

35.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice.  In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 31 and 32, above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

36.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.

37.     Informal Dispute Resolution.  Any dispute subject to dispute resolution under this Consent Decree shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when one Party sends the other Party a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

38.     Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual

data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

39.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

40.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 10 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

41.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

42.     <u>Standard of Review</u>

Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 38, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and that it is entitled to relief under applicable principles of law. The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with the law, and Defendant reserves the right to oppose this position.

43.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 27.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.  INFORMATION COLLECTION AND RETENTION

44.     The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into any of the Active Facilities covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.     monitor the progress of activities required under this Consent Decree;

b.     verify any data or information submitted to the United States in accordance with the terms of this Consent Decree;

c.     obtain documentary evidence, including photographs and similar data; and

d.     assess Defendant's compliance with this Consent Decree.

45.     Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information  (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this

- 15 -

information-retention period, upon request by the United States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph.

46.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

47.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable federal laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

48.     This Consent Decree resolves the civil claims of the United States for the violations alleged in the Finding and Notice of Violation issued to Defendant on September 10, 2010 (Docket No. R9-10-17) (attached as the Appendix to this Consent Decree) and in the Complaint filed in this action through the date of lodging.

49.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 48.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in Paragraph 48.  The United States further reserves all legal and equitable remedies to address any imminent and substantial endangerment to the public health or welfare or the environment arising at, or posed by, the Facility or Active Facilities, whether related to the violations addressed in this Consent Decree or otherwise.

50.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for

achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

51.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

52.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

53.     The Parties shall bear their own costs of this action, including attorneys fees, except that the United States shall be entitled to collect the costs (including attorneys fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.  NOTICES

54.     Unless otherwise specified herein, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

1  To the United States:

2

3  Chief, Environmental Enforcement Section

4  Environment and Natural Resources Division

5  U.S. Department of Justice

6  Box 7611 Ben Franklin Station

7  Washington, DC  20044-7611

8  Re: DOJ No. 90-5-2-1-10139

9

10  and

11

12  David H. Kim

13  Office of Regional Counsel

14  U.S. Environmental Protection Agency

15  Region IX

16  75 Hawthorne Street (ORC-3)

17  San Francisco, CA 94105

18

19  To EPA:

20

21  David H. Kim

22  Office of Regional Counsel

23  U.S. Environmental Protection Agency

24  Region IX

25  75 Hawthorne Street (ORC-3)

26  San Francisco, CA 94105

27

28

To Defendant:

Mitchell Klein

Polsinelli Shughart

One East Washington, Suite 1200

Phoenix, Arizona 85004-2568


Agustin Figueroa

Regional Environmental Manager

CEMEX

4646 E. Van Buren Street, Suite 250

Phoenix, Arizona 85008


CEMEX

929 Gessmer Road

Suite 1900

Houston, Texas 77024

Attention: General Counsel

55.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

56.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

XIV.  EFFECTIVE DATE

57.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.  RETENTION OF JURISDICTION

58.     The Court shall retain jurisdiction over this case until termination of this Consent Decree pursuant to Section XVII for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX and XVI, or effectuating or enforcing compliance with the terms of this Decree.

## XVI.  MODIFICATION

59.      The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Decree, it shall be effective only upon approval by the Court.

60.     Any disputes concerning modification of this Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 42, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

## XVII.  TERMINATION

61.     After Defendant has completed the installation requirement of Section V (Compliance Requirements), complied with the operation requirement of Section V for at least one year, completed the requirements of Section VI (Reporting Requirements), and paid the civil penalty and any accrued interest and stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

62.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United

States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

63.     If the United States does not agree that the Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination, under Paragraph 38 of Section IX, until 60 Days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

64.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.

## XIX.  SIGNATORIES/SERVICE

65.     Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

66.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited

to, service of a summons.

## XX.  INTEGRATION

67.    This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supercedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XXI.  FINAL JUDGMENT

68.    Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII.  APPENDIX

69.    The Appendix, the September 8, 2010, Finding and Notice of Violation in the Matter of CEMEX Materials, LLC (Docket No. R9-10-17), is attached to and part of this Consent Decree.

1    We hereby consent to the entry of the Consent Decree in the matter of *United States v.*

2    *CEMEX Construction Materials South, LLC.*, subject to public notice and comment.

3

4

5    FOR PLAINTIFF UNITED STATES OF AMERICA:

6

7

8

9                                                          9/20/12

10   ELLEN M. MAHAN                    Date
     Deputy Chief
11   Environmental Enforcement Section
12   Environment and Natural Resources Division
     United States Department of Justice
13

14

15

16                                                          9/22/12

17   ANGELA MO                         Date
18   Trial Attorney
     Environmental Enforcement Section
19   Environment and Natural Resources Division
20   United States Department of Justice
     P.O. Box 7611
21   Washington, DC 20044-7611
22   T: (202) 514-1707
     F: (202) 616-2427
23   angela.mo@usdoj.gov

24

25

26

27

28

                              - 23 -

1   We hereby consent to the entry of the Consent Decree in the matter of *United States v.*

2   *CEMEX Construction Materials South, LLC*, subject to public notice and comment.

3

4

5   FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:

6

7

8

9                                                                9/12/12

10  JARED BLUMENFELD                          Date
    Regional Administrator
11  U.S. Environmental Protection Agency, Region IX

12

13

14

15  nancy J. Marvel for                        9/12/12

16  CYNTHIA J. GILES                           Date
    Assistant Administrator
17  Office of Enforcement and Compliance Assurance

18  U.S. Environmental Protection Agency

19  OF COUNSEL:

20  David H. Kim
    Office of Regional Counsel
21  U.S. Environmental Protection Agency, Region IX

22  75 Hawthorne Street (ORC-3)
    San Francisco, California 94105
23  (415) 972-3882

24

25

26

27

28

                         - 24 -

1   We hereby consent to the entry of the Consent Decree in the matter of *United States v.*

2   *CEMEX Construction Materials South, LLC.*

3

4

5   FOR DEFENDANT CEMEX CONSTRUCTION MATERIALS SOUTH, LLC:

6

7

8

9   _____          _____

10  Name: Mike E. Egan                        Date  9/10/12

11

12  Title: General Counsel

13

14  Company: Cemex

15

16  Address: 929 Gessner Road, Ste 1900

17           Houston, Tx  77024

18

19

20  _____          _____

21  MITCHELL KLEIN                            Date  9/11/12

22  Attorney for Defendant
    Polsinelli Shughart

23  One East Washington Street, Suite 1200
    Phoenix, Arizona 85004-2568

24

25

26

27

28

- 25 -

**IT IS ORDERED APPROVING** the consent decree (doc. 7).

DATED this 18th day of January, 2013.

_Frederick J. Martone_

Frederick J. Martone
United States District Judge

1
2
3
4
5
6
7
<u>APPENDIX</u>
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES
ENVIRONMENTAL PROTECTION AGENCY
REGION 9

In the Matter of:                                          )
                                                           )
CEMEX Materials, LLC,                                      )          Docket No. R9-10-17
                                                           )
Proceeding under Section 113(a),                           )          FINDING AND
Clean Air Act, as Amended                                  )          NOTICE OF VIOLATION
                                                           )
_____                   )

   This Finding and Notice of Violation ("NOV") is issued pursuant to section 113(a)(1) of

the Clean Air Act (the "Act"), 42 U.S.C. § 7413(a)(1), to CEMEX Materials, LLC ("CEMEX")

for violations of the Act at its facility located at Mesa, Arizona.

   The authority of the Administrator of the United States Environmental Protection Agency

("EPA") to issue this NOV pursuant to section 113(a)(1) of the Act has been delegated to the

Regional Administrator of EPA Region 9, and redelegated to the Director, Air Division, EPA

Region 9.

## STATUTORY AND REGULATORY AUTHORITY

1.  The Administrator of EPA, pursuant to authority under section 109 of the Act, 42 U.S.C.

   § 7409, promulgated the National Ambient Air Quality Standards ("NAAQS") for certain

   criteria air pollutants. 40 C.F.R. §§ 50.9, 50.10.

2.  Pursuant to section 107(d) of the Act, 42 U.S.C. § 7407(d), the Administrator

   promulgated lists of attainment status designations for each air quality control region

   ("AQCR") in every state. These lists identify the attainment status of each AQCR for

   each of the criteria pollutants. The attainment status designations for the Arizona AQCRs

1

are listed at 40 C.F.R. § 81.303.

3.    CEMEX engages in sand and gravel mining and processing at its facility (the "Facility")

located at 1901 N. Alma School Road, Mesa, Arizona.  The Facility is subject to the

jurisdiction of the Maricopa County Air Quality Department ("MCAQD" or the

"Department").  EPA has designated Maricopa County as a serious nonattainment area

for the NAAQS for particulate matter.  See 40 C.F.R. § 81.303.

4.    Section 110 of the Act, 42 U.S.C. § 7410, requires each state to adopt and submit to EPA

a plan which provides for the implementation, maintenance, and enforcement of primary

and secondary NAAQS in the State.  Upon approval by EPA, the plan becomes part of the

"applicable implementation plan" (or "SIP") for the State.  Pursuant to section 113(a)(1)

of the Act, 42 U.S.C. § 7413(a)(1), EPA may enforce violations of the SIP.

5.    MCAQD Regulation I, Rule 2 was approved into and made a part of the federally

enforceable SIP pursuant to 42 U.S.C. § 7410 on August 17, 1982.[1]

6.    MCAQD Regulation III, Rule 316 was approved into and made a part of the federally

enforceable SIP pursuant to 42 U.S.C. § 7410 on January 8, 2010.[2]

7.    Section 81 of MCAQD Rule 2 defines "source" as "any facility, equipment, machine,

incinerator, structure, building, device or other article (or combination thereof) which is

located on one or more contiguous properties and which is owned or operated by the

same person (or by persons under common control) and which emits or may emit an air

pollutant."

---

[1]47 Fed. Reg. 26382 (June 18, 1982).

[2]74 Fed. Reg. 58553 (November 13, 2009).

2

8.   Section 71 of MCAQD Rule 2 defines "pollutant" as "an air contaminant the emission or ambient concentration of which is regulated pursuant to these rules and regulations."

9.   Section 7 of MCAQD Rule 2 defines "air contaminants" to include "smoke, vapors, chemical, paper, dust, soot, grime, carbon, fumes, gases, sulfuric acid mist, aerosols, aerosol droplets, odors, particulate matter, windborne matter, radioactive materials, noxious chemicals, or any other material in the outdoor atmosphere."

10.  Section 69 of MCAQD Rule 2 defines "person" as "any public or private corporation, company, partnership, firm, association or society of persons, the Federal Government and any of its departments or agencies, the State and any of its agencies, departments or political subdivisions, as well as a natural person."

11.  MCAQD Rule 316 is intended to "limit the emission of particulate matter into the ambient air from any nonmetallic mineral processing plant and/or rock product processing plant." See Section 101, MCAQD Rule 316.

12.  Section 102 of MCAQD Rule 316 provides that MCAQD Rule 316 "shall apply to any commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant."

13.  Section 235 of MCAQD Rule 316 defines "nonmetallic mineral processing plant" as "[a]ny facility utilizing any combination of equipment or machinery that is used to mine, excavate, separate, combine, crush, or grind any nonmetallic mineral including, but not limited to, lime plants, coal fired power plants, steel mills, asphalt plants, concrete plants, Portland cement plants, raw material storage and distribution, and sand and gravel plants."

14. Section 234 of MCAQD Rule 316 defines "nonmetallic mineral" to include crushed and broken stone, including limestone, dolomite, granite, rhyolite, traprock, sandstone, quartz, quartzite, marl, marble, slate, shale, oil shale, and shell; sand and gravel; clay; rock salt, and gypsum.

15. Section 214 of MCAQD Rule 316 defines "crusher" as "[a] machine used to crush any nonmetallic minerals including, but not limited to, the following types: jaw, gyratory, cone, roll, rod mill, hammermill, and impactor."

16. Section 249 of MCAQD Rule 316 defines "screening operation" as "[a] device that separates material according to its size by passing undersize material through one or more mesh surfaces (screens) in series and retaining oversize material on the mesh surfaces (screens).

17. Section 257 of MCAQD Rule 316 defines "transfer point" as "[a] point in a conveying operation where nonmetallic mineral is transferred from or to a belt conveyor except for transfer to a stockpile."

18. Section 256 of MCAQD Rule 316 defines "trackout" as "[a]ny and all bulk materials that adhere to and agglomerate on the surfaces of motor vehicles, haul trucks, and/or equipment (including tires) and that have fallen or been deposited onto a paved area accessible to the public.

19. Section 257 of MCAQD Rule 316 defines "trackout control device" as "[a] gravel pad, grizzly, wheel washer, rumble grate, paved area, truck washer, or other equivalent trackout control device located at the point of intersection of an unpaved area and a paved area accessible to the public that controls and prevents trackout and/or removes

4

particulate matter from tires and the exterior surfaces of aggregate trucks, haul trucks, and/or motor vehicles that traverse a facility."

20.   Section 248 of MCAQD Rule 316 defines "rumble grate" as "[a] system where the vehicle is vibrated while traveling over grates with the purpose of removing dust and other debris."

21.   Section 263 of MCAQD Rule 316 defines "wheel washer" as "[a] system that is capable of washing the entire circumference of each wheel of the vehicle."

22.   Section 301.2(b) of MCAQD Rule 316 provides that the owner and/or operator of a crushing and/or screening operation must permanently mount watering systems (e.g., spray bars or an equivalent control) at the inlet and outlet of all crushers; outlet of all shaker screens; and outlet of all material transfer points, excluding wet plants.

23.   Section 301.2(c) of MCAQD Rule 316 provides that the owner and/or operator of a crushing and/or screening operation must operate watering systems (e.g., spray bars or an equivalent control) on the points listed in Section 301.2(b) of MCAQD Rule 316 for crushers, shaker screens, and material transfer points, excluding wet plants, to continuously maintain a 4% minimum moisture content.

24.   Section 301.2(c)(1) of MCAQD Rule 316 requires daily inspections of the watering systems to ensure that such systems are maintained in good operating condition.

25.   Section 301.2(c)(3) of MCAQD Rule 316 requires soil moisture tests twice a day for those facilities required to have in place a Fugitive Dust Control Technician under Section 309 of MCAQD Rule 316; once a day for those facilities not required to have in place a Fugitive Dust Control Technician under Section 309 of MCAQD Rule 316; and

5

once a week for those facilities that have demonstrated that the 4% minimum moisture content has been maintained for a minimum of four weeks.

26. Section 502.3(a) of MCAQD Rule 316 provides that if twice daily moisture sampling is required under Section 301.2(c)(3)(c), such sampling shall be conducted within one hour of startup and again at 3 p.m. or within one hour prior to daily shutdown but no less frequently than once every 8-hour period.

27. Section 502.3(b) of MCAQD Rule 316 provides that if daily moisture sampling is required under Section 301.2(c)(3)(c), such sampling shall be conducted within one hour after startup.

28. Section 502.3(c) of MCAQD Rule 316 provides that soil moisture testing shall be conducted on all crushers, shaker screens, and material transfer points (excluding wet plants) at the following sample points: "(1) Within 10 feet from the point where crushed aggregate material is placed on the discharge belt conveyor from the crusher; (2) Within 10 feet from the point where screened aggregate material is placed on the conveyor; and (3) From each stacker point."

29. Section 301.2 of MCAQD Rule 316 provides that the owner and/or operator of a crushing and/or screening operation is exempt from the requirements of Section 301.2(b) and (c) if it encloses and exhausts the regulated process to a properly sized fabric filter baghouse pursuant to Section 301.2(d).

30. Section 307.6(a) of MCAQD Rule 316 provides that the owner and/or operator of a commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant with a minimum of 60 aggregate trucks, mixer trucks, and/or batch

6

trucks exiting the facility on any day onto paved public roadways/paved areas accessible to the public shall install, maintain, and use a rumble grate and wheel washer. The rumble grate must be located within 10 feet from a wheel washer, and both the rumble grate and wheel washer shall be located no less than 30 feet prior to each exit that leads to a paved public roadway/paved area accessible to the public. The owner and/or operator of the facility must also pave the roads from the rumble grate and wheel washer to the facility exits leading to paved public roadways/paved areas accessible to the public.

31.  Section 307.6(b) of MCAQD Rule 316 provides that the owner and/or operator of a commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant with less than 60 aggregate trucks, mixer trucks, and/or batch trucks exiting the facility on any day onto paved public roadways/paved areas accessible to the public shall install, maintain, and use a rumble grate, wheel washer, or truck washer. The device must be located no less than 30 feet prior to each exit that leads to a paved public roadway/paved area accessible to the public. If haul/access roads are unpaved between the device and the facility exits leading to paved public roadways/paved areas accessible to the public, a gravel pad with a layer of washed gravel, rock, or crushed rock that is at least one inch or larger in diameter and 6 inches deep, 30 feet wide, and 50 feet long, shall be installed, maintained, and used from the device to the exit.

32.  Section 307.6(b)(4) of MCAQD Rule 316 provides that the owner and/or operator of a commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant with less than 60 aggregate trucks, mixer trucks, and/or batch trucks exiting the facility on any day onto paved public roadways/paved areas accessible to the

7

public shall install, maintain, and use a gravel pad from the rumble grate, wheel washer, or truck washer to paved public roadways/paved areas accessible to the public if haul/access roads between the two points are unpaved. The gravel pad must be designed with a layer of washed gravel, rock, or crushed rock that is at least one inch or larger in diameter and 6 inches deep, 30 feet wide, and 50 feet long.

33.   Section 501.2(a) of MCAQD Rule 316 requires that daily records shall be kept for all days that a commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant is actively operating, including: (1) hours of operation; (2) type of batch operation (wet, dry, central); (3) throughput per day of basic raw materials including sand, aggregate, cement (tons/day); (4) volume of concrete produced per day (cubic yards per day) and volume of asphaltic concrete produced per day (tons per day); (5) volume of aggregate mined per day (tons per day); (6) amount of each basic raw material including sand, aggregate, cement, fly ash delivered per day (tons/day); and (7) for facilities that claim less than 60 aggregate trucks, mixer trucks, and/or batch trucks exiting the facility on any day onto paved public roadways/paved areas accessible to the public, number of such vehicles exiting the facility.

34.   Section 303.2(d) of MCAQD Rule 316 provides that the owner and/or operator of raw material storage and distribution, concrete plants, and/or bagging operations must install a pressure control system on cement silo filling processing/loading operation controls to shut off such operations if pressure from delivery truck is excessive.

8

## FINDINGS OF FACT

35. CEMEX engages in sand and gravel mining/processing and concrete production operations in Maricopa County, Arizona.

36. At all times relevant to this notice, the Facility contained: (1) sand and gravel operations; (2) batch concrete plant; and (3) central mix concrete plant.

37. The Facility is a "commercial and/or industrial nonmetallic mineral processing plant and/or rock product processing plant" as defined by MCAQD Rule 316.

38. CEMEX is a "person" as that term is defined in section 69 of MCAQD Rule 2.

39. CEMEX is an "owner and/or operator" within the meaning of MCAQD Rule 316.

40. On or about April 22, 2010, inspectors from EPA and MCAQD inspected the Facility.

41. During the April 22, 2010 inspection, the EPA inspectors observed that the Facility engaged in excavation, crushing, screening, processing, storage and/or export of sand, soil, gravel, and other bulk materials.

42. During the April 22, 2010 inspection, the EPA inspectors observed that the Facility had failed to install spray bars or an equivalent control at: (1) the outlet of the material transfer point between the feed hopper and the main screen; (2) the outlet of the main screen; (3) the outlet of the JCI screen; and (4) the outlet of the material transfer point between the feed hopper and the wet plant.

43. According to CEMEX, the Facility has at least 60 aggregate trucks, mixer trucks, and/or batch trucks exiting the Facility on any day onto public roadways/paved areas accessible to the public.

44. During the April 22, 2010 inspection, the EPA inspectors observed that the Facility had a

rumble grate but no wheel washer to control trackout.

45.  During the April 22, 2010 inspection, the EPA inspectors observed that the Facility does not meter aggregate or related materials directly to ready-mix or hot mix asphalt trucks and is at least 5 acres in land size.

46.  During the April 22, 2010 inspection, the EPA inspectors measured the distance between the paved road leading from the rumble grate to the Facility exit leading to paved public roadway/paved areas accessible to the public to be 0.19 miles.

47.  During the April 22, 2010 inspection, the EPA inspectors observed that the batch concrete plant and central mix concrete plant at the Facility lacked a pressure control system in the cement silo filling processing/loading operation controls to shut off such operations if pressure from delivery trucks is excessive.

48.  EPA issued an information request to CEMEX pursuant to Section 114 of the Clean Air Act, 42 U.S.C. § 7414, on June 15, 2010.

49.  Records submitted by CEMEX in response to EPA's June 15, 2010 information request show that the Mesa Facility failed to perform twice daily soil moisture tests for its sand and gravel operations on January 4, 5, 6, 28, and 29, and February 1, 16, and 24, and May 25 and 26, 2010.

### FINDINGS OF VIOLATION

50.  On or about April 22, 2010, CEMEX violated section 301.2(b) of MCAQD Rule 316 at the Facility by failing to install spray bars or an equivalent control at: (1) the outlet of the material transfer point between the feed hopper and the main screen; (2) the outlet of the main screen; (3) the outlet of the JCI screen; and (4) the outlet of the material transfer

10

point between the feed hopper and the wet plant.

51.     On or about April 22, 2010, CEMEX violated section 307.6(a) of MCAQD Rule 316 by

        failing to install, maintain, and use a rumble grate and wheel washer to control trackout at

        the Facility.

52.     On or about January 4, 5, 6, 28, and 29, and February 1, 16, and 24, and May 25 and 26,

        2010, CEMEX violated sections 301.2(c)(3) and 502.3(c) of MCAQD Rule 316 by failing

        to perform twice daily soil moisture tests for sand and gravel operations at the Facility.

53.     On or about April 22, 2010, CEMEX violated section 303.2(d) of MCAQD Rule 316 by

        failing to install a pressure control system on cement silo filling processing/loading

        operations controls at the batch concrete plant and central mix concrete plant of the

        Facility that is designed to shut-off such operations if pressure from delivery trucks is

        excessive.

## ENFORCEMENT

Section 113(a)(1) of the Act provides that at any time after the expiration of 30 days

following the date of the issuance of this NOV, EPA may, without regard to the period of

violation,

-       issue an order requiring compliance with the requirements of the SIP or permit, or

-       issue an administrative penalty order pursuant to section 113(d) for civil

        administrative penalties of up to $37,500 per day of violation, or

-       bring a civil action pursuant to section 113(b) for injunctive relief and/or civil

        penalties of not more than $37,500 per day for each violation.

42 U.S.C. § 7413(a)(1), as amended by Pub. L. No. 104-34. Furthermore, for any person who

knowingly violates any SIP or permit requirement more than 30 days after the date of the issuance of the NOV, section 113(c) provides for criminal penalties or imprisonment, or both.

In addition, under section 306(a), the regulations promulgated thereunder (40 C.F.R. Part 32), and Executive Order 11738, facilities to be used in federal contracts, grants, and loans must be in full compliance with the Act and all regulations promulgated pursuant to it.  Violation of the Act may result in the subject facility being declared ineligible for participation in any federal contract, grant, or loan.

## PENALTY ASSESSMENT CRITERIA

Section 113(e)(1) of the Act states that the Administrator or a court, as appropriate, shall, in determining the amount of any penalty to be assessed, take into consideration (in addition to such other factors as justice may require) the size of the business, the economic impact of the penalty on the business, the violator's full compliance history and good faith attempts to comply, the duration of the violation as established by any credible evidence (including evidence other than the applicable test method), payment by the violator of penalties previously assessed for the same violation, the economic benefit of noncompliance, and the seriousness of the violation.

Section 113(e)(2) of the Act allows the Administrator or a court to assess a penalty for each day of violation.  For the purpose of determining the number of days of violation, where the EPA makes a prima facie showing that the conduct or events giving rise to this violation are likely to have continued or recurred past the date of this NOV, EPA shall presume the days of violation to include the date of this NOV and each and every day thereafter until the violator establishes that continuous compliance has been achieved, except to the extent that the violator can prove by a preponderance of the evidence that there were intervening days during which no

violation occurred or that the violation was not continuing in nature.

## OPPORTUNITY FOR CONFERENCE

CEMEX may, upon request, confer with EPA.  The conference will enable CEMEX to present evidence bearing on the finding of violation, the nature of the violation, and any efforts it may have taken or proposes to take to achieve compliance.  CEMEX may be represented by counsel.  A request for a conference must be made within ten (10) days of receipt of this NOV. The request for a conference or other inquiries concerning the NOV should be made in writing to:

David H. Kim (ORC-3)
Office of Regional Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105-3901
(415) 972-3882

Date  9-8-10

Deborah Jordan
Director, Air Division
EPA Region 9

13